The next case is Langlois v. Hartford Board of Education Mr. DeRosa You're on mute. I apologize your honors. Oh, good morning. Well, good afternoon. Good morning. This is attorney Rose I was talking while mooted. I apologize. I am Attorney for Lanny Langlois. She's present with me and her husband in my office right now masked, but they're here the first issue on appeal is That the summary judgment when we filed both the summary judgment and they follow counter summary judgment the summary judgments Should have gone to the jury or at least the summary judgment should be granted in our favor and or it should have been submitted to the jury because the The court erred in finding the defendant was not discriminated against on the basis of race and that by imposing a hostile work environment requiring an unworkable and ineffective structural support plan on The plaintiff who could do nothing to prevent the chaos fighting and violence in the media center where she worked between students Which the plan was designed to address and thereby in its futility acted as a systemic campaign to intimidate and harass my client ultimately resulting in her constructive Determination Your honors the evidence in this case, I believe is overwhelming that The the miss Langlois and their trial counsel developed that there was a problem here in the pedagogical approach by the Principal at the time who's Karen Lott That she believed that there were certain teachers of certain ethnicities were better at teaching African-american hispanic teachers are better at teaching african-american and hispanic students and that infected her perception of My client and her ability to manage was basically she's a librarian and she also taught some classes with regards to teaching the children Certain basic informational computer technologies and and that sir She was under she was monitored by a camera, which is not correct, which is not generally done in most classrooms because There is there any evidence in the record that the monitoring with a camera was because of race Your honor, technically the monitoring was in place primarily because there was Equipment there that could be stolen. I mean and and they wanted to make sure that the library was monitored It was not in the unions the unions excluded classrooms, but did not exclude both the gym and The and the library, but they were used your honor. I would suggest so my question is this you there is a list of Grievances and my question is what evidence is there in the record? that these things were motivated by by race, you know, I You've identified the principles Observation that certain races and that the cities were better at teaching African-american children correct Beyond that is your evidence that that race was a motivating factor But your honor, I think that the fact is that I've suggested by comparators that there were several other teachers that were targeted for similar White teachers are targeted for similar treatment by miss lot because of Now what is the evidence or is there evidence that your client was treated less favorably than similarly situated non-white teachers I know you point to the comparison is there evidence of that as that African-american teachers were treated more favorably than she was in the record Your honor I at this point. I don't really Have a I don't know if the trial attorney explicitly Explored that area per se. I think he was more concerned about this these comments that I Say it again that are on page 21 to 22 of my brief and also in the reply brief at 2 to 3 in detail that there were concerns that there these comments were made specifically directed at Ethnicity and race which was was primarily what the focus was. She just all she That miss Longolus knew is that she was being berated by various you know, she wasn't supported the whole point of my analysis in terms of the second prong of the Donald's Douglas test is she was Not supported whatsoever When she had difficulties, I see what she'd be rated. Is there evidence that she was berated because of her race We mean what's your evidence that they they use racial slurs or that of that nature anything of that nature Correct. Any any evidence to show that she was berated? because She is white Well, your honor. She was similar other people who are similarly situated to her were also treated in that this man and I elucidated in the In these con anything else anything else? Well, your honor there was not cut there were some conversations that the the Explicitly on race your honor. I mean explicitly in the sense that this Italy or implicitly direct or Circumstantial that supports the claim that race was a motivating factor implicitly your honor. She was not given the support necessary to do some of the product that the Things that you that they that the school asked her to do she was given a plan that was not very clear and then at the end it was designed at the end of it at the end of the plan when for example, let's talk about grading which is Almost made fun of by the other side Counsel the question is what this has to do with race. It may have been unpleasant, but what's the basis? non-speculatively for connecting this to a racial attitude Bitch run the very comments that the that the woman made during the case that the very comments that she had made in public and at school board meetings that she believed that the that the that the African-american hispanic teachers were in a better position to monitor and direct children of color And similarly situated. I mean your honor that that seems to be enough in my view to bring this before a jury There was she was harassed she was bullied by the various Persons about by by miss Lott and by her staff and the administrators with regards as we talked about some of the emails that were brought up at the end the case when she had taken a medical leave and There are there were concerns about its particular incidents and she would get multiple emails from multiple different persons But there is there in the record of the case any race conscious Statement directed to her whether in writing or orally I'm your honor The there I don't know if there was anything specific But the client indicates there were some oral argument there were some oral comments made to her about her ability to teach That are in the record That are in the record. Yes, sir Let's just take a quick look, I believe I believe I cite one on page three of my report Karen Lott said students should have that look like them in the spring of 2015 that was a deposition of my client Karen Lott said Then there's a couple depositions that that's one deposition. That's odd. That's at volume one deposition When I goes page a 131 your honor of the appendix That was directed specifically to her And there were other comments were made by other persons bringing the same sort of attention to whatever And she said this on multiple occasions miss Lott that there were that it was well known within the school that that she had this opinion of white white teachers teaching Students and I I tried to demonstrate both In this case and in whatever that these these comments were well-known within the school and they were directed specifically miss Lott And your honors, I mean, I also think that you look at the structured support plan. That was that was vague unclear and then also Even though the the the mr. Paul OSIP is a white man who was a principal who was monitoring her Karen Lott was on many times worked in tandem with mr. offset to have this a woman evaluated in the in and removed in their evaluation and I believe that your honor that That's enough for to go to the jury. I'm not suggesting that you know, ultimately the City might not prevail, but I certainly think it's how can you move for summary judgment? Well, your honor, I mean I do think that I like I do I'm taking as a secondary position I do think that originally removed for summary judgment based on the fact that there is a there's a You're conceding that your summary judgment motion was meritless, correct? No, I'm not saying it's conceding it your honor I am saying though that a military could find the other way That's a concession But your honor if the fact of the matter is if they if if you end up having these kind of racial comments being made In the school system, it's at least a question for the jury Even if even if it's not appropriate for summary judgment, it's certainly not it doesn't have to be an all-or-nothing It could go to the jury both of motions could be denied and the matter could be submitted to the jury Your honor. I see. I don't have any yes. Yes. Thank you. Mr. D'Alessio. You deserve some rebuttal time. Thank you You said your honors, thank you. Good morning, ma'am, please the court My name is Melinda Kaufman from the law firm of Pullman and Cumley and I represent all of the appellees in this matter We would request that the court uphold the district courts granting of summary judgment to all of the appellees for several reasons First miss Langlois has not provided evidence of any disputed material facts From which a reasonable jury could find that she was subjected to a racially hostile work environment Second she has failed to produce evidence of disparate treatment through a claim of constructive discharge I will skip ahead for a moment to the questions on race while we believe we believe that both miss Langlois cannot show that the Work environment was hostile and she certainly cannot show that it was based on race Starkly lacking from any of the evidence anywhere in the case is any evidence of a teacher who is not of her race being Treated more favorably than she something that she needed to show or at least show some sort of evidence that she was being treated less favorably than others who were not aware about the the evidence of principal lots Comments in essence that white teachers can't do a good job teaching children of color Is that enough to? Suggest that there was a racial motivation to the Hostile treatment No, your honor for several reasons first We would note that I dispute that was sad, but we're accepting it for purposes of summary judgment It was a comment miss miss Langlois testified at her deposition. She couldn't remember when it was said She couldn't remember where it was said. She couldn't remember who it was said to She thought it was said that either maybe a faculty meeting or a professional development. That is simply one comment One offhand comment, obviously the case law is stands for it seems a little bit more than an offhand comment Maybe the faculty meeting the comments that your racial group could not do as good a job and stay in the job there's another and the performance of your job responsibilities is a It's a hostile remark, isn't it? Well, it may be and I would say an inappropriate remark if it was said there needs to be more than to establish that any Actions taken against miss Langlois was based on her race And if you look at the undisputed facts here There are several things that show that race was not considered at the school pause on that for a moment suppose you inverted the races in the comment and the comment had been that White students should be taught only by white teachers in effect the mirror image of what she is said to have said and she said that at a faculty meeting apart from the inevitable uproar that would have arisen wouldn't we Likely treat that as infusing a lot of surrounding actions taken towards black teachers Your honor again in the similar situation if it was a single comment, it would not be sufficient to create a hostile work environment Whether it's said from one race to the other certainly inappropriate certainly not what we want to hear But not a hostile work environment and we take an effect in this case That in this situation the majority of the teachers at Milner school during the time principal lot was there. They were all white The woman that she chose to replace Langlois when Langlois resigned or left her position was also white Miss Lott chose to Promote a white special education teacher to be the lead special education teacher during this time and in fact during this time Miss Lott moved to non-renew the employment of a non-tenured teacher who was not white that woman was African-american Miss Langlois, however, never received discipline never received anything like that It was merely a concern that her work was being criticized and that is insufficient to establish a hostile work environment We also have to look at whether the environment was legally sufficient to show it was hostile in this case She needs to show that there were things that were both severe and pervasive here as far as severe She testified three separate times during her deposition That the actions that she was complaining about were and this is her word benign and those are on pages 106 153 and 388 of the record Furthermore the undisputed facts also show that it was not pervasive in response to an Interrogatory in which she was asked to detail each and every time she was subjected to harassment She only pointed to three separate days Where she claimed things like Lott yelling at her suggesting she find another job If she weren't happy and telling her that she was in a dangerous place due to her conduct or not her conduct or performance I'm sorry The facts show that Ms. Langlois herself refuses to accept any Responsibility for her own actions. It's Undisputed that at the end of the time when she was at school there were four separate physical fights that occurred in the library and these Fights were between the first graders five and six year old students These are the students that she has described throughout this throughout her pleadings and throughout her deposition as emotionally disturbed She calls all the students at Milner habitually disruptive often violent and unresponsive to all methods of behavior management This is what the administration was addressing When they were talking about her performance when they ultimately put her on a support plan because they were not seeing that she was Providing lesson plans that were encouraging the students to learn Managing behavior in a way that was keeping the students safe When we look at what she considered to be harassment These are the type of things as the district court found that are the normal things you would see in a school And frankly, I find it almost shocking that a teacher would claim that having her Draft lesson plans and grade her students is considered harassment or having her manage the behavior of her students while they're under her tutelage was again harassment or Documenting the emails that they point to that they claim of harassment Are the school district documenting when students were fighting and were injured in her classroom? They absolutely had to address that with her. They didn't discipline her for it They addressed her with concerns and they often gave her suggestions of how she might try to improve her Performance there. These aren't things that are hostile and they aren't things that were based on her race It's simply a teacher who unfortunately was struggling was put on a support plan as would be appropriate As to her claim that she was being constructively discharged as you know an employee is constructively discharged when the employer Intentionally creates a working atmosphere so intolerable that the employee has no choice, but to resign There's also a second step to that however And that the employee before they can claim constructive discharge has to show that they had taken any avenues of redress That are available to them before simply stopping showing up to work, and that's what she did She went on a medical leave. She never came back. She never reached out to say I'm not coming back I need more sick leave nothing. She just stopped coming to work Lila attempts to create throughout this this fiction that the support plan that she put on Automatically was going to lead to her termination, or it was somehow put in place to confuse her This was all done with her union present. She never challenged the support plan her union never challenged the support plan Support being put on the support plan is actually the lowest level of intervention if you look at the teacher Evaluation plan which is located. I believe that our supplemental It's the first exhibit in our supplemental appendix. There are two levels of support There's a support plan which is given the person more support, and then there's professional intensive assistance Which could possibly lead to termination if a person is put into that she wasn't put in there because they were not trying to Terminate her they were not trying to get rid of her. They were trying to help her improve her behavior and improve her performance I Believe those are the only two claims that are left on appeal we would again say that because those other claims that were in there Such as the claims individually against mr. Ossipuk and Ms. Lott We're not in any way briefed and were not mentioned in the pre-argument statement as to what our appeals It is our claim that those are waived at this point So with that we would request that this court uphold the district courts granting of summary judgment to the defendants as to all the claims and obviously deny the The opponents request to uphold their own summary judgment motion. Thank you Thank you Your honors, let me start the video The special education these various comments that have been made about the replacement being a white individual and the like The fact of the matter is your honor that that's not indicative of what's happened here She was specifically targeted and eventually someone who was more junior from internal promotion was put in the position as a librarian and That that was what happened there It wasn't necessarily by Karen Lott going out to the public and selecting this individual to replace her with regards to You know the comments of the benign comments made by my client during the deposition what she was indicating was if you look at each Individual incident it may appear to be benign, but if you look at the pattern Of what has happened in this particular case? It's not benign at all It's actually a systemic attempt to harass and intimidate her with regards to the fact that she didn't challenge the SSD that she was indicated by her union that she couldn't challenge it. This was the This was required of her and and she was in her view disciplined by constant meetings constantly being evaluated constantly being reviewed to the point that her health was Under doctor's care the woman was is was 65 years old at the time of this incident That's and she was one of the few union people left in that particular school The fact of the matter is that there was a determination to target this person and remove them Not simply because of their employment because of her race Because of that she that there was the opinion that she couldn't manage these This particular situation and and with regards to the children fighting in in a school She thought the union told her she's not in a position to to to physically separate these children It's not appropriate There are other people who are assigned in the school to do this and she was given no support No security nothing and by the way there are physical fights and did this particular school was as As admitted by the Hartford Board of Education was a very disadvantaged school and a very tough neighborhood It actually the name still remains But the particular building has been closed and it's now another school and another location in a new building the name Milner is a well-regarded person in Hartford And so the name was kept but the long and the short of it is this is school was not Successful and my client was collateral damage to it. And that's what really happened here There are she was not the whole school has been closed and they couldn't they couldn't figure out what to do But this woman's attempt that her pedagogical approach was a complete failure And the fact of the matter is my client was damaged because of it I believe there was enough evidence here to allow a reasonable jury to consider whether it was discriminatory accident apart these issues constructively and she was constructively terminated and therefore Should be submitted to a jury for review and I asked the court to reverse the matter and at least that point alone Even if even if the court is not inclined to grant summary judgment in our favor, but it's really a jury question I believe and I think that the my trial lawyer and miss Angola's through a testimony has given more than enough information to suggest that Unless there are any questions, I believe I'm over time at this point Yes, thank you, mr. DeRosa and we will take the matter under advisement